**ZBS LAW, LLP**
Nichole L. Glowin, Esq. (SBN 262932)
30 Corporate Park, Suite 450
Irvine, CA 92606
Telephone: (714) 848-7920
bankruptcy@zbslaw.com

Attorneys for Movant, Clearlake Ventures IV, LLC

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| In re: | Case No.: 22-21231 |
| Larry Errol Miller, | DC No. NLG-1 |
| | Chapter 13 |
| Debtor. | **EXHIBITS 1-9 IN SUPPORT OF 1) MOTION FOR RELIEF FROM THE AUTOMATIC STAY (REAL PROPERTY) AND 2) DECLARATION IN SUPPORT OF MOTION FOR RELIEF** |
| | HEARING: |
| | DATE:      July 26, 2022 |
| | TIME:      1:30 p.m. |
| | PLACE:    United States Bankruptcy Court |
| | 501 I Street, Suite 3-200 |
| | Sacramento, CA 95814 |
| | Courtroom 33 |

| EXHIBIT # | DOCUMENT | PAGE # |
|:---:|:---:|:---:|
| 1 | Note | 3-18 |
| 2 | Deed of Trust | 19-20 |
| 3 | Assignment(s) | 21-22 |
| 4 | Notice of Default | 23-25 |
| 5 | Notice of Sale | 26-32 |

EXHIBITS IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY

| 6 | Docket First Bankruptcy Action | 33-35 |
| 7 | First BK Dismissal Order | 36 |
| 8 | Schedules A, D and J | 37-47 |
| 9 | Post-Petition Payment History | 48 |

Dated: June 27, 2022

**ZBS LAW, LLP**

By: */s/ Nichole L. Glowin*
    Nichole L. Glowin, SBN 262932
    Counsel for Movant.

# AFFIDAVIT OF LOST HOME EQUITY LINE OF CREDIT (HELOC) AGREEMENT

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

BEFORE ME, an officer authorized to take oaths this day, personally appeared Yamila Soto of Bank of America, N.A., who, being first duly sworn, deposes and says:

1.      I am an employee of Bank of America, National Association (**"BANA"**) with the title of Assistant Vice President and am authorized to sign this affidavit on behalf of BANA. BANA is the servicer with respect to the following loan:

> **Loan Number:**
>
> **Borrower(s) Stated on HELOC Agreement: LESLYE RAE MILLER**
>
> **Date of HELOC Agreement:  04/07/2004**
>
> **Credit Limit Stated on HELOC Agreement: $50,000.00**
>
> **Property Address: 18121 FOREST RD, LAKEHEAD, CA 96051**

2.      Some of the information in this affidavit is taken from BANA's business records. I have personal knowledge of BANA's procedures for creating and maintaining these records. Such business records are: (a) made at or near the time of the occurrence of the matters set forth therein by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; and (b) kept in the course of BANA's regularly conducted business activities. It is the regular practice of BANA to make such records. I have personal knowledge of BANA's procedures for the safekeeping and retrieval of original HELOC agreements serviced by BANA and BANA's procedures for determining that an original HELOC agreement is lost.

3.      Based on BANA's business records, attached as Exhibit A is a copy of the above referenced Home Equity Line of Credit ("HELOC") Agreement.

4.      I have personal knowledge that BANA's procedures were followed in determining that the original Agreement has been lost and that a good faith effort was made to locate the lost Agreement in accordance with such procedures.

1 of 2

# EXHIBIT 1

5.      After due diligence and based on BANA's business records, possession of the Agreement cannot reasonably be obtained because the HELOC Agreement was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person.

6.      Based on BANA's business records, the loss of possession of the HELOC Agreement is not the result of a rightful transfer or a lawful seizure of the HELOC Agreement.


            FURTHER AFFIANT SAYETH NOT.


            BY: _____

            NAME: Yamila Soto

            TITLE: Assistant Vice President

            DATE: _____ 10-14-15 _____


STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

Sworn to (or affirmed) and subscribed before me on this [14th] day of
[ OCT. ], 2015, by Yamila Soto (name of signer).


(NOTARY SEAL)

JUDITH ANN MALICKI
Notary Public, State of Florida
Commission# FF149308
My comm. expires Aug. 10, 2018

_____
(Signature of Notary Public-State of Florida)

JUDITH ANN MALICKI
_____
(Name of Notary Typed, Printed, or Stamped)


Personally known __X__ OR Produced Identification _____
Type of Identification Produced _____


2 of 2

# EXHIBIT 1

# INDEMNIFICATION FOR AFFIDAVIT OF LOST HOME EQUITY LINE OF CREDIT AGREEMENT

This indemnification agreement is made in connection with the Affidavit of Lost Home Equity Line of Credit Agreement attached herewith. The undersigned agrees that, in the event the undersigned recovers the original Home Equity Line of Credit agreement ("HELOC Agreement") at any time, the undersigned will cause the original HELOC Agreement to be returned to the proper place of custody, without requiring any consideration.

The undersigned also agrees to indemnify and hold the borrower(s), **LESLYE RAE MILLER**, and any of the borrower's(s') heirs and assigns harmless against any loss or damage, including principal, interest, reasonable attorneys' fees and costs, that might occur by reason of a claim by another person to enforce the Agreement.

Date: 10-14-15          **BANK OF AMERICA, NATIONAL ASSOCIATION**

By: _____

Name: Yamila Soto

Title:   Assistant Vice President

# EXHIBIT 1

# BANK OF AMERICA EQUITY MAXIMIZER© AGREEMENT AND DISCLOSURE STATEMENT

**ACCOUNT NUMBER:**

**Borrower:** LESLYE RAE MILLER

**Lender:** Bank of America, N.A.
c/o North Carolina Main office
101 Tryon Street
Charlotte, N.C. 28255

**CREDIT LIMIT:** $ 50,000.00        **DATE OF AGREEMENT:**   04 /07 / 04

**Introduction.** This Bank of America Equity Maximizer ® Agreement and Disclosure Statement ("Agreement") governs your line of credit (the "Equity Maximizer Account") issued through Bank of America, N.A. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean Bank of America, N.A. You agree to the following terms and conditions:

**Promise to Pay.** You promise to pay Bank of America, N.A., or order, the total of all credit advances and **FINANCE CHARGES,** together with all costs and expenses for which you are responsible under this Agreement or under the "Security Instrument" which secures your Equity Maximizer Account ("Security Instrument"). You will pay your Equity Maximizer Account according to the payment terms set forth below. **If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each borrower authorizes any other borrower, on any other borrower's signature alone, to cancel the Equity Maximizer Account, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.**

**Term.** The term of your Equity Maximizer Account will begin as of the date of this Agreement ("Opening Date") and will continue until   APRIL 7th, 2029     ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your Equity Maximizer Account will begin on the date after the Opening Date following the expiration of the right to cancel, the perfection of our Security Instrument securing this agreement, receipt of all required certificates of noncancellation, and the meeting of all our other conditions and will continue as follows: 120 months ("Draw Period"). You may obtain credit advances during this Draw Period. After the Draw Period ends, the Repayment Period will begin and you will no longer be able to obtain credit advances. The length of the Repayment Period is as follows: up to 180 months depending on the payment schedule set forth below. You agree that we may renew or extend the period during which you may obtain credit advances or make payments. Notwithstanding the foregoing, in no event will the time during which you may obtain credit advances on the Equity Maximizer Agreement exceed twenty-five (25) years.

**Minimum Payment**

**During the Draw Period.** The "Total Minimum Payment Due" is equal to the Variable Rate Balance Minimum Payment below, the payment due, if any, for any outstanding Fixed Rate Loan Option and any past due amounts from prior billing periods. (Some Fixed Rate Loan Options may have a different due date and are not figured in the calculation of the Total Minimum Payment Due). At any time you may pay more than the Total Minimum Payment Due, make additional payments or pay in full or in part the Outstanding Balance. The "Outstanding Balance" is the new balance of the Equity Maximizer Account (which, if applicable, includes principal, accrued interest on the outstanding principal, fees and charges, Property Expenses (defined as any expense which we incur because you do not fulfill all obligations of this Agreement or if you or another party does not fulfill all obligations of the Security Instrument for the property which secures this Agreement) and any voluntary insurance or Borrowers Protection Plan™. We reserve the right to apply payments in any manner we choose, without notice. Your "Variable Rate Balance" is all of your Outstanding Balance that is not part of a Fixed Rate Loan Option.

You may choose any of the following monthly and quarterly Draw Period payment options. Your billing statement will reflect the option you have chosen. You may also change your Draw Period payment option at a later time.

    **Variable Rate Balance Minimum Payment** – Depending on what payment schedule option you choose for the Draw Period, the Variable Rate Balance Minimum Payment may vary. The Variable Rate Balance Minimum Payment will not be less than the amount of accrued interest and any voluntary insurance, plus any unpaid fees.

CLS3312-1 /0003 /AA 04-02        Page 1 of 13           California

# EXHIBIT 1

**Monthly Payment Options:**

**Interest Only Option** – The Minimum Payment will be the amount of accrued interest, plus any unpaid fees.

**1.5% of Variable Rate Outstanding Balance Option** – The Minimum Payment will be one and one half percent (1.5%) of the Variable Rate Outstanding Balance plus any unpaid fees, or fifty dollars ($50), whichever is greater, or the Variable Rate Outstanding Balance if less than the Minimum Payment.

**Fixed Payment Option** – The Minimum Payment will be at least one and one half percent (1.5%) of the Equity Maximizer Account limit plus any unpaid fees, or fifty dollars ($50), whichever is greater, or the Variable Rate Outstanding Balance if less than the Minimum Payment.

**Quarterly Payment Options:**

**Interest Only Option** – The Minimum Payment will be the amount of accrued interest and unpaid fees.

**4.5% of Variable Rate Outstanding Balance Option** – The Minimum Payment will be four and one half percent (4.5%) of the Variable Rate Outstanding Balance plus any unpaid fees, or one hundred fifty dollars ($150), whichever is greater, or the Variable Rate Outstanding Balance if less than the Minimum Payment.

**Fixed Payment Option** – The Minimum Payment will be at least four and one half percent (4.5%) of the Equity Maximizer Account limit plus any unpaid fees, or one hundred fifty dollars ($150), whichever is greater, or the Variable Rate Outstanding Balance if less than the Minimum Payment.

**During the Repayment Period.** The payment frequency you select for the Draw Period is the same for the Repayment Period. The length of the Repayment Period will vary depending on the Outstanding Balance at the beginning of the Repayment Period if any Property Expenses are incurred during the Repayment Period and if you have any Fixed Rate Loan Options. The amount of the Total Minimum Payment Due may vary due to increases or decreases in the Index or if there are any Fixed Rate Loan Options that remain unpaid at the beginning of the Repayment Period.

You may choose either the following monthly or quarterly Repayment Period payment option. Your billing statement will reflect the option you have chosen. You may also change your Repayment Period payment option at a later time.

**Monthly Payment Option** – The Total Minimum Payment Due will be an amount equal to the greater of 1/180th of the Variable Rate Principal Balance remaining on the last day of the Draw Period, plus accrued interest, unpaid fees, unpaid Property Expenses and any voluntary insurance, or fifty dollars ($50). If there are any Fixed Rate Loan Options that remain unpaid at the start of the Repayment Period, the Fixed Rate Loan Option payments previously established will continue to be billed.

**Quarterly Payment Option** – The Total Minimum Payment Due will be an amount equal to the greater of 1/60th of the Variable Rate Principal Balance remaining on the last day of the Draw Period, plus accrued interest, unpaid fees and unpaid Property Expenses, or one hundred fifty dollars ($150). If there are any Fixed Rate Loan Options that remain unpaid at the start of the Repayment Period, the Fixed Rate Loan Option payments previously established will continue to be billed.

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied to FINANCE CHARGES, other charges and fees, and principal in any order we choose without notice.

**Receipt of Payments.** All payments must be made by a check, automatic account debit, electronic funds transfer, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address prior to 2:00 P.M. local time at the location specified, or a payment made at one of our banking centers in the state of our address first described above, by 2:00 P.M. local time on any business day will be credited to your Equity Maximizer Account as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Equity Maximizer Account, but crediting may be delayed for up to five (5) days after receipt. Business days are Monday through Friday, exclusive of legal holidays. If the due date falls on a Saturday, Sunday or legal holiday, the due date will not be extended.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of Fifty Thousand and 00/100'S      Dollars ($   50,000.00     ), which will be your "Credit Limit" under this Agreement. **During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights.** You may borrow against the Equity Maximizer Account, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make

# EXHIBIT 1

your Equity Maximizer Account balance exceed your Credit Limit. You agree to repay immediately the amount by which your Equity Maximizer Account exceeds your Credit Limit, even if we have not yet billed you. Any credit advances in excess of your Credit Limit will not be secured by the Security Instrument covering your principal dwelling.

**Charges to your Equity Maximizer Account.** We may charge your Equity Maximizer Account to pay other fees and costs that you are obligated to pay under this Agreement, the Security Instrument (such as a mortgage or deed of trust) or any other document related to your Equity Maximizer Account. In addition, we may charge your Equity Maximizer Account for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Security Instrument for this transaction. We may also, at our option, charge your Equity Maximizer Account to pay any costs or expenses to protect or perfect our security interest in your principal dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling. If you do not pay your property taxes, we may charge your Equity Maximizer Account and pay the delinquent taxes. Any amount so charged to your Equity Maximizer Account will be a credit advance and will decrease the funds available, if any, under the Equity Maximizer Account. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** After the Effective Disbursement Date of this Agreement, as stated on the signature page of this Agreement, you may obtain credit advances under your Equity Maximizer Account where available as follows:

**Equity Maximizer Account Checks.** Writing a preprinted "Special Convenience Check" that we will supply to you.

**Telephone Request.** Requesting a credit advance from your Equity Maximizer Account to be applied to your designated account by telephone upon proper identification and in accordance with procedures established by us. Except for transactions covered by the federal Electronic Fund Transfer Act and unless otherwise agreed in your deposit account agreement, **you acknowledge and you agree that we do not accept responsibility for the authenticity of telephone instructions and that we will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when acting upon such instructions believed to be genuine.**

**Requests In Person.** Requesting a credit advance in person at any of our authorized locations.

**ATM Access (Not available in ID, OR and WA).** Use your Bank of America ATM card or Bank of America Check Card or "Bank of America Equity Maximizer ® Visa ® account access card" ("Account Access Card") at any of our designated ATM locations. **(In CA, ATM Access is only available thru the Bank of America Equity Maximizer Visa account access card.)**

**Bank of America Equity Maximizer Visa Account Access Card (Not available in ID, OR and WA).** Use the Account Access Card as described in this Agreement.

**Online Banking.** Transferring funds to the deposit account that you designate.

If there is more than one person authorized to use this Equity Maximizer Account, you agree not to give us conflicting instructions, such as one of you telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor Special Convenience Checks in the following circumstances:

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Special Convenience Check.

**Post-dated Checks.** Your Special Convenience Check is post-dated. If a post-dated Special Convenience Check is paid and as a result any other check is returned or not paid, we are not responsible.

**Stolen Checks.** Your Special Convenience Checks have been reported lost or stolen.

**Unauthorized Signatures.** Your Special Convenience Check is not signed by an "Authorized Signer" as defined herein.

**Termination or Suspension.** Your Equity Maximizer Account has been terminated or suspended as provided in this Agreement or could be if we paid the Special Convenience Check.

**Other Restrictions/Other Limitations.** (1) You may not make a payment on the Account with a Special Convenience Check. (2) You notify us that you wish to stop payment of a Special Convenience Check or however you will not hold us liable if we try to stop payment of the Special Convenience Check and we are unable to do so. You may try to stop payment on a Special Convenience Check by notifying Customer Service at the number listed on your statement. Your stop payment order will remain in effect for six (6) months unless renewed.

EXHIBIT 1

If we pay any Special Convenience Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Special Convenience Check. The Special Convenience Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Special Convenience Checks along with your periodic billing statement; however, your use of each Special Convenience Check will be reflected on your periodic statement as a credit advance. We do not "certify" Special Convenience Checks drawn on your Equity Maximizer Account.

**Limitations on the Use of Account Access Card.** We reserve the right not to honor Account Access Cards in the following circumstances:

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by honoring the Account Access Card charge.

**Stolen Account Access Card.** Your Account Access Card has been reported lost or stolen.

**Termination or Suspension.** Your Equity Maximizer Account has been terminated or suspended as provided in this Agreement or could be if we honored the Equity Maximizer Account charge.

If we pay any advance requested by use of the Account Access Card under these conditions, you must repay us, subject to applicable laws, for the amount of the advance. The advance itself will be evidence of your debt to us together with the Agreement. Our liability, if any, for wrongful dishonor of an advance is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. Your use of the Account Access Card will be reflected on your periodic statement as a credit advance.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Equity Maximizer Account:

**Account Access Card Limitations.** The following transaction limitations will apply to your Equity Maximizer Account and accessing by other methods.

**Other Transaction Requirements. Limitations on the Use of Account Access Card.** We reserve the right not to honor the account access card linked to this Equity Maximizer Account in the following circumstances:

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Account Access Card transaction.

**Stolen Account Access Card.** Your Account Access Card has been reported lost or stolen.

**Unauthorized Signatures.** Your Account Access Card is not used by a Borrower who has been issued one.

**Termination or Suspension.** Your Equity Maximizer Account has been terminated or suspended as provided in the Agreement or could be if we paid the Account Access Card transaction.

If we pay any advance requested by use of the Account Access Card under these conditions, you must repay us, subject to applicable laws, for the amount of the advance. The advance itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of an advance is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. Your use of the Account Access Card will be reflected on your periodic statement as a credit advance.

**Liability for Unauthorized Account Access Card Transactions.** You are not liable for unauthorized use of your Account Access Card. Just notify us promptly if you believe your Account Access Card has been lost or stolen or if you discover any unauthorized transactions. We may require you to provide a written statement regarding claims of unauthorized Account Access Card transactions.

**VISA is a registered trademark of VISA International Service Association.**

Lender's liability, if any, for wrongful dishonor of an advance request is limited to Borrower's actual damages. Lender shall not be liable if any merchant, financial institution or ATM refuses to honor the Account Access Card.

**Equity Maximizer Account Special Convenience Check, Telephone Request, In Person Request and ATM Access Limitations.** There are no transaction limitations for the writing of Special Convenience Checks, requesting an advance by telephone, or requesting an advance in person.

**Authorized Signers.** The words "Authorized Signer" on Special Convenience Checks and Account Access Cards as used in this Agreement mean and include each person who (a) signs the application for this Equity Maximizer Account, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Equity Maximizer Account.

# EXHIBIT 1

**Lost Special Convenience Checks and Account Access Cards.** If you lose your Special Convenience Checks or Account Access Cards or if someone is using them without your permission, you agree to let us know immediately. You can notify us at our address shown at the beginning of this Agreement.

**Prohibited Uses.** You agree not to use any Equity Maximizer Account credit advances to make payments on your Equity Maximizer Account.

**Future Equity Maximizer Account Services.** Your application for this Equity Maximizer Account also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Equity Maximizer Account. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by the following collateral described in the Security Instrument securing this Agreement, listed herein, all the terms and conditions of which are hereby incorporated and made a part of this Agreement, a Deed of Trust dated APRIL 7th, 2004          , to us on real property located in SHASTA County, state of California.

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the mortgage or deed of trust, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

**Periodic Statements.** If you have a balance owing on your Equity Maximizer Account or have any account activity, we will send you a periodic statement. It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for credit advances under your Equity Maximizer Account will begin to accrue on the date credit advances are posted to your Equity Maximizer Account. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Equity Maximizer Account credit advances.

If you choose to establish automatic payment to draft your designated Bank of America account, the authorization will remain in full force and effect until the Bank has received written or verbal notification from you of its termination in such time and in such manner as to afford the Bank a reasonable opportunity to act on it. If at any time you select to terminate your automatic payment, your Margin will increase by 1/4%.

**HOW THE BALANCE ON WHICH THE FINANCE CHARGE IS CALCULATED IS DETERMINED.** The cost of the credit through the Equity Maximizer Account is disclosed as a Finance Charge. Except for some closing costs (indicated in this Agreement), interest will not accrue until a credit advance is made. You will pay interest on each credit advance until it is fully paid off. We will determine the FINANCE CHARGE for each monthly billing period by using the following simple interest rate calculation. A FINANCE CHARGE is calculated daily for that portion of the principal balance that is not payable under a Fixed Rate Loan Option ("Variable Rate Principal Balance") by multiplying the daily periodic rate (as indicated in "How The Rate Is Used To Calculate The Finance Charge is Determined") by the daily Variable Rate Principal Balance for that day. To get the daily Variable Rate Principal Balance we (i) take the beginning Variable Rate Principal Balance for that day (ii) add to that amount all credit advances and sums advanced by us to fulfill any obligations under a Security Instrument (such as a mortgage, deed of trust, or security agreement), if any, for that day, then (iii) subtract all principal balance payments and credits for the Variable Rate Principal Balance for that day. All of the daily Variable Rate Principal Balance FINANCE CHARGES for the monthly billing cycle are added to get the total Variable Rate Principal Balance FINANCE CHARGE for the monthly billing cycle. Transaction charges, including but not limited to Fixed Rate Loan Option conversion fees, are added to the Variable Rate Principal Balance FINANCE CHARGE to get the total FINANCE CHARGE for the monthly billing cycle. For Fixed Rate Loan Option balances, the estimated FINANCE CHARGE is calculated at the establishment of the Fixed Rate Loan Option and is included in the fixed payment amount.

**HOW THE RATE USED TO CALCULATE THE FINANCE CHARGE IS DETERMINED.** The initial Variable Rate Principal Balance daily periodic rate used to compute the Variable Rate Principal Balance FINANCE CHARGE is 1/365 of the initial Variable Rate Principal Balance ANNUAL PERCENTAGE RATE (as indicated under "Periodic Rate and Corresponding Annual Percentage Rate"). The Variable Rate Principal Balance ANNUAL PERCENTAGE RATE is a variable rate involving both an index and a margin, both described under "Periodic Rate and Corresponding Annual Percentage Rate". Finance Charges will accrue on an actual 365 day

# EXHIBIT 1

year basis (366 day year basis for leap year). If, however, you participate in a relationship account with a Bank of America Corporation affiliate (as offered from time to time), the Variable Rate Principal Balance Daily Periodic Rate and the Variable Rate Principal Annual Percentage Rate may be reduced below the rates stated in this Agreement. The addition of a fee may cause the actual Variable Rate Principal Balance Annual Percentage Rate for the monthly billing cycle to exceed the Variable Rate Principal Balance Annual Percentage Rate stated in this Agreement.

If the index is unavailable for any monthly billing cycle, we will use the Index for the most recently preceding monthly billing cycle in which the Index was available. If the Index ceases to be published during the term of this Agreement, we will select a substitute index and margin. The substitute index will have a historical movement substantially similar to the index, and the substitute index and margin will result in an Annual Percentage Rate at the time it is substituted that is substantially similar to the rate in effect at the time the index became unavailable.

There is no limitation on the size of any interest rate adjustment or the number of interest rate adjustments that may be made on the Equity Maximizer Account so long as the maximum Annual Percentage Rate is not exceeded. Any increase or decrease in the Index that occurs would cause a corresponding increase or decrease in the Daily Periodic Rate, Annual Percentage Rate, Finance Charges and possibly the Total Minimum Payment Due. You understand that adjustments based on an Index change will be applied automatically to the Equity Maximizer Account and you will not receive advance notice of that adjustment.

The Finance Charge on a Fixed Rate Loan Option is determined on a simple interest basis. If you make a Fixed Rate Loan Option payment(s) before or after any date, either the amount of your originally scheduled final payment may be lower or higher than the amount initially established or additional payment(s) may be required.

Under some circumstances, your payment will not cover the Finance Charges that accrue and negative amortization will occur. Negative amortization will increase the total amount you may pay us and reduce the equity in the Property.

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** as follows. We start with an independent index, which is the Prime Rate as published daily in the "Money Rates" table of The Wall Street Journal. When a range of rates has been published, the higher of the rates will be used. Changes in the Annual Percentage Rate will be based on the Index published the last business day prior to the first day of the next monthly billing cycle, plus the Margin, and will be effective on the first day of the next monthly billing cycle (the "Index"). We will use the most recent index value available to us as of the date of any **ANNUAL PERCENTAGE RATE** adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Equity Maximizer Account, we may designate a substitute index after notice to you. To determine the Periodic Rate that will apply to your First Payment Stream, we add a margin to the value of the Index, and then divide the value by the number of days in a year (daily). To obtain the **ANNUAL PERCENTAGE RATE** we multiply the Periodic Rate by the number of days in a year (daily). This result is the **ANNUAL PERCENTAGE RATE** for your First Payment Stream. To determine the Periodic Rate that will apply to your Second Payment Stream, we add a margin to the value of the Index, and then divide the value by the number of days in a year (daily). To obtain the **ANNUAL PERCENTAGE RATE** we multiply the Periodic Rate by the number of days in a year (daily). This result is the **ANNUAL PERCENTAGE RATE** for your Second Payment Stream. The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs.

The Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Equity Maximizer Account will increase or decrease as the Index increases or decreases from time to time. Any increase in the Periodic Rate will take the form of higher payment amounts. Adjustments to the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** resulting from changes in the Index will take effect monthly. In no event will the corresponding **ANNUAL PERCENTAGE RATE** be more than the lesser of 24.000% or the maximum rate allowed by applicable law. Today the Index is _____ 4.000 % _____ per annum, and therefore the initial Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Equity Maximizer Account are as stated below:

### Current Rates for the First Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 0.500 % | 4.500 % | 0.01229508 % |

### Current Rates for the Second Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 0.500 % | 4.500 % | 0.01229508 % |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds, except as may be permitted during any Right of Rescission period.

Page 6 of 13

# EXHIBIT 1

**Forgo Rate Increases.** If we forgo an **ANNUAL PERCENTAGE RATE** increase, at the time of the later adjustment we may return to the full Index value plus margin.

**Conditions Under Which Other Charges May Be Imposed.** You agree to pay all the other fees and charges related to your Equity Maximizer Account as set forth below:

**Scheduled Fee Changes.** To the extent allowed by applicable law, we may increase any or all of the fees and charges described in this Agreement by 20% of the existing fee each calendar year.

**Other Charges.** Your Equity Maximizer Account may be charged the following other charges: Miscellaneous Charges. The amount of this other charge is: to the extent allowed by applicable law, any other amount incident to the application for and the opening, administration and termination of the Equity Maximizer Account, including, but not limited to, reinstatement of Equity Maximizer Account privileges, processing of nonconforming payments processing and additional expense if an Equity Maximizer Account advance occurs in a foreign country, express courier charges, taxes and any penalties or interest thereon, imposed on this Agreement or on any transaction effected pursuant to this Agreement. We may advance any such cost or tax and any penalty or interest.

**Annual Fee** – $0 will be charged to the Equity Maximizer Account on or after each anniversary date unless the average daily balance for the past 12 month period is either (i) $15,000 or (ii) 30% of the Line.

**Fixed Rate Loan Option Conversion Fee** • There is a $0 conversion fee charged for the establishment of each Fixed Rate Loan Option.

**Late Fee** – If wo do not receive the amount of your minimum monthly payment in full within ten (10) days after your payment due date, you will pay us a late charge equal to the greater of $10.00 or five percent (5%) of the unpaid portion of your minimum monthly payment.

**Returned Special Convenience Check Charge** – There is a $20.00 Returned Special Convenience Check Charge each time an Equity Maximizer Account Draw is rejected for any reason.

**Returned Payment Charge** – There is a $20.00 Returned Payment Charge each time your payment is returned or if there are insufficient funds in your account when a payment is attempted through automatic repayment service.

**Security Interest Charges.** You agree to pay all security interest charges related to your Equity Maximizer Account as set forth below:

| | | |
|---|---|---|
| Appraisal | $ | 0.00 |
| Title Insurance | $ | 0.00 |
| Title Search | $ | 0.00 |
| Title 3rd party | $ | 0.00 |
| Survey Inspection | $ | 0.00 |
| Environmental Inspection | $ | 0.00 |
| Transfer Fee | $ | 0.00 |
| | | |
| Total | $ | 0.00 |

**Lender's Rights.** Under this Agreement, we have the following rights:

**Termination and Acceleration.** We can terminate your Equity Maximizer Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happens: (1) You commit fraud or make a material misrepresentation at any time in connection with this Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Agreement. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1) The value of your property declines significantly below the property's appraised value for purposes of this Equity Maximizer Account. This includes, for example a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

Page 7 of 13

# EXHIBIT 1

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Equity Maximizer Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Equity Maximizer Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker. No default will occur until we mail or deliver a notice of default to you, so you can restore your right to credit advances.

(4) We are precluded by government action from imposing the **ANNUAL PERCENTAGE RATE** provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Equity Maximizer Account, or if the change is insignificant (such as changes relating to our data processing systems). If the Index is no longer available, we will choose a new Index and margin. The new Index will have a historical movement substantially similar to the original Index, and the new Index and margin will result in an **ANNUAL PERCENTAGE RATE** that is substantially similar to the rate in effect at the time the original index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum **ANNUAL PERCENTAGE RATE** under your Equity Maximizer Account is reached.

**Collection Costs.** We may hire or pay someone else to help collect any and all monies due pursuant to this Agreement if you do not pay. You will pay us those amounts. This includes, subject to any limits under applicable law, our attorneys' fees and our legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, you also will pay any court costs, in addition to all other sums provided by law.

**Rate Increase.** In addition to our other rights during termination and acceleration, we may increase the variable **ANNUAL PERCENTAGE RATE** under this Agreement to a maximum of 24.00% percent per annum. The **ANNUAL PERCENTAGE RATE** will not exceed the maximum rate permitted by applicable law. If we do not increase the **ANNUAL PERCENTAGE RATE** upon termination or acceleration of your Equity Maximizer Account, it will continue at the variable rate in effect as of the date of termination or acceleration of your Equity Maximizer Account.

**Access Devices.** If your Equity Maximizer Account is suspended or terminated, you must immediately return to us all Special Convenience Checks and any other access devices. Any use of Special Convenience Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Special Convenience Checks or other Equity Maximizer Account access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us and return all Special Convenience Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount(s) owing under the variable revolving portion of this Equity Maximizer Account at any time, without penalty. However, we will be entitled to receive all accrued FINANCE CHARGES, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Equity Maximizer Account. You agree not to send us payments marked "paid in full", "without recourse" or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written

# EXHIBIT 1

communications concerning disputed amounts, including any checks or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to us at the address shown on your statement.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Credit Information and Related Matters.** You authorize us to release information about you to third parties as described in our Privacy Policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law. You agree that upon our request, you will provide us with a current financial statement, a new credit application, or both, on forms provided by us. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Equity Maximizer Account at any time, including an internal inspection, at our sole option and expense.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Equity Maximizer Account and your rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Security Instrument securing this Agreement. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Equity Maximizer Account, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Equity Maximizer Account is not deductible. You should consult your own tax advisor for guidance on this subject.

**Use of the Equity Maximizer Account.** There are some additional rules about how Borrower uses the Equity Maximizer Account:

**A. Legal Transactions.** Borrower agrees that Borrower will only use the Equity Maximizer Account for transactions that are legal where Borrower resides. For example, Internet gambling transactions may be illegal in Borrower's state. Display by an on-line merchant of either Lender's logo or a Card Company's logo does not mean that an Internet transaction is legal where Borrower resides. Lender will not be liable if Borrower engages in an illegal transaction.

**B. Authorizations.** Some transactions require Lender's prior authorization. For security purposes, Lender may from time to time place or change limits on the number or amounts of transactions Borrower makes in a day at ATMs or point of sale terminals. Such limitations may not be the same at every ATM or point of sale terminal. No such limits are placed on the number or amounts of transactions Borrower makes; at Lender's banking centers, by writing a Special Convenience Check, by conducting an Overdraft Protection transaction (subject to the ATM limits, above), or by telephone. In addition, Lender may deny authorization to any method of accessing the Equity Maximizer Account if the Equity Maximizer Account has been suspended or terminated or if Lender suspects fraudulent activity. Lender shall not be liable for any failure to authorize a transaction for any of these reasons. However, Borrower is liable for any transaction Lender authorizes even if Lender should not have authorized it because Borrower is or would be in default as a result of the transaction.

**C. No Security Interest on Purchases.** This Agreement does not grant Lender a security interest in purchases Borrower charges to the Equity Maximizer Account.

**D. Transactions With Merchants.** (a) If a merchant discloses a policy such as "no returns", "no refund", "no return or credit without receipt", "as is", "store credit only", or "all sales final", or similar language, Borrower will be bound by that policy when Borrower uses the Equity Maximizer Account to buy goods or services from that merchant. (b) When using the Equity Maximizer Account to make travel or lodging reservations, Borrower must obtain the merchant's cancellation policy and follow it if Borrower cancels. If Borrower cancels, Borrower must obtain the cancellation number that the merchant is required to give Borrower. The merchant may charge Borrower for a cancelled transaction unless Borrower can provide Lender with a correct cancellation number. If Borrower makes reservations or purchases of any kind, such as a lodging reservation for several nights stay or a mail order purchase, the Equity Maximizer Account may be immediately charged for the full amount of the reservation or purchase, regardless of whether Borrower has received the goods or services requested at the time the Equity Maximizer Account is charged. (c) If Borrower authorizes a merchant to charge the Equity Maximizer Account for repeat transactions without the Account Access Card, then Borrower must notify the merchant when Borrower wants to discontinue the repeat transactions or if the Equity Maximizer Account is closed or a new Equity Maximizer Account or Account Access Card number is issued by Lender. Otherwise, Borrower will be responsible to Lender for the amount of all such repeat transactions. (d) If Borrower disagrees with a transaction on Borrower's statement or has a dispute with a merchant as a result of a transaction, Borrower

# EXHIBIT 1

will provide Lender with information or assistance Lender reasonably requests. Otherwise, Borrower will pay Lender for any resulting loss Lender has, unless Lender is prohibited by applicable law from holding Borrower liable for Lender's loss. (e) If Borrower makes a transaction in a currency other than U.S. dollars, VISA will convert the charge or credit into a U.S. dollar amount. The conversion rate will be determined using VISA currency conversion procedures that are disclosed to institutions issuing VISA cards. The conversion rate on the processing date may differ from the rate on the date of Borrower's transaction. Currently, VISA uses a currency conversion rate of either: (1) a wholesale market rate or (2) a government mandated rate, increased by 1% ("Foreign Currency Margin"). In each case, VISA uses a rate in effect one day before the conversion date. The U.S. dollar amount and the "rate" shown on the Statement for each foreign currency transaction include only the 1% retained by VISA. In the event VISA chooses to change the Foreign Currency Margin, the currency conversion rate, or the day on which the currency conversion rate is determined, then transactions on the Equity Maximizer Account made in a foreign currency and processed after the change will reflect the change.

**E. Special Rule for Account Access Card Purchases (Not available in ID, OR and WA).** If Borrower has a problem with the quality of goods or services that Borrower purchased with an Account Access Card, and Borrower has tried in good faith to correct the problem with the merchant, Borrower may not have to pay the remaining amount due on the goods or services. Borrower has this protection only when the purchase price was more than $50 and the purchase was made in Borrower's home state or within 100 miles of Borrower's mailing address. (If Lender owns or operates the merchant, or if Lender mailed Borrower the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase).

**Overdraft Protection and Linked Accounts (Not available in CA and OR).** If the Equity Maximizer Account is not blocked, suspended or terminated, you may request that the Equity Maximizer Account be set up to provide overdraft protection for an associated checking or money market savings account. If the total amount of checks or other debits for a business day exceeds the available associated account balance, then an advance will be made from the Equity Maximizer Account ("Overdraft Protection"). If the Equity Maximizer Account is used for Overdraft Protection, the minimum transfer amount will be in multiples of one hundred dollars ($100) and incremental transfer amounts will be in multiples of one hundred dollars ($100). However, if there is not $100 available, but the available Equity Maximizer Account amount can cover the overdraft transaction, then the amount of the available Equity Maximizer Account will be advanced to cover the overdraft. (Note: for ID and WA, the incremental advance is $25. If the available credit on your account will not allow a $25 increment to be advanced, no transfer will be made). If the associated account is closed or blocked, Overdraft Protection will stop. If you request that the Equity Maximizer Account be connected to or "linked" to another Bank of America product, you understand and agree that a user on the "linked" account can make a transaction that exceeds the available balance on the "linked" account and cause an advance to be made. Also, if an ATM access card is given to a user on the "linked" account, that user when using the ATM access card may access the Equity Maximizer Account and obtain an advance without making a transaction directly on the "linked" account. That user may or may not be a party obligated for this Agreement.

**Skip Payment Feature.** At our discretion, from time to time we may offer a feature that will allow you to skip one or more payments. FINANCE CHARGES will continue to accrue on the principal balance at the applicable interest rate. At the end of the skip payment period, the payment terms of this Agreement will be reinstated automatically without further notice.

**Automatic Payment and Reservation of Rights.** If you choose to have payments made from a designated account and have arranged with us to do so, we will automatically draft the payment. Drafts will be made on the payment due date or immediately after the payment due date (if the payment due date is on a Saturday, Sunday or legal holiday). If your account does not contain the payment amount due, you understand that it is your obligation without notice from us to make the full payment. Even if you make a manual payment an automatic payment will be drafted from your designated account, unless you make such manual payment for the full payment due at least three (3) business days prior to the due date; however, if you make less than a full manual payment at least three (3) business days prior to the due date, only the remaining amount currently due will be drafted. To stop an automatic draft, you must contact us at least three (3) business days prior to the scheduled payment draft date. We may accept late payments, partial payments or checks and money orders marked "payment in full" (or similar notations) or payments accompanied by a letter stating that our acceptance of the payment indicates our agreement to the terms set forth in the letter without giving up, waiving or losing any of our rights under law or under this Agreement.

**Additional Suspension or Reduction Information.** Notwithstanding the notice of default provision contained in section (3) in the Suspension or Reduction section above, our suspension of Equity Maximizer Account privileges will be effective immediately. Written notice will be mailed to you within three (3) business days after the suspension of privileges.

**Miscellaneous.** If this Note or Agreement represents a renewal, modification, extension, substitution or consolidation of an obligation owed to us, then you acknowledge and agree that there are no claims, setoffs, avoidances, counterclaims or defenses or rights to claims, setoffs, avoidances, counterclaims or defenses to payment or enforcement of the prior obligation. You agree that if this Note or Agreement is in default, including the failure to make the Minimum Payment by the due date, you will accept calls regarding the collection of this Note or Agreement at any residence or place of employment. The calls can be automatically dialed and a recorded message may be played. You agree such calls will not be "unsolicited" calls for purposes of any federal, state or local law. To improve customer service and security, telephone communications with you may be monitored and

EXHIBIT 1

recorded. You agree that monitoring or recording may be done and that no additional notice to you or additional approval from you is needed. You authorize us, our parent company, Bank of America corporation (or any successor company) and Bank of America corporation's affiliates and subsidiaries ("Affiliates") to: (a) obtain other information deemed necessary concerning the granting and maintaining of this Note or Agreement, including the obtaining of credit bureau and other reports concerning your credit experience and other information from credit reporting agencies, creditors, any department of motor vehicles or similar state agency, your employer (past, present and future) and other persons (and all such entities may release and/or verify such information to us at any time without notification to you or without your consent), and (b) share information with our Affiliates, except to the extent that you have opted out of such sharing as provided in our Privacy Policy for consumers. This Note or Agreement constitutes the entire understanding and agreement between the parties as to the matters set forth in this Note or Agreement and supercedes all prior understandings and correspondence, oral or written, with respect to the subject hereof. We reserve the right to defer or delay the date certain changes are to occur without notice and without being liable for any such deferment or delay. A court decree for divorce or separation or non-court approved mutual agreement does not affect, eliminate or reduce any person's liability for the Note or Equity Maximizer Account balance if we are not a party to the decree or agreement. Notwithstanding any other provision contained in the Note or this Agreement, we do not intend to charge, and you shall not be required to pay, any amount of finance charge or fee more than the maximum permitted by applicable law. Any payment in excess of the maximum shall be refunded to you or credited against principal, at our option. If this Note or Agreement is a renewal of a prior Note or Agreement, then it is the intent of the parties that the Note or Agreement evidencing the original extension of credit not be extinguished by the renewal. It is further the intent of the parties that no novation shall occur by the renewal of such extension of credit. Our records shall be evidence of whether this Note or Agreement is a renewal. The word "you" shall also mean Borrower. The word "we" shall also mean Lender.

**Request to Issue Account Access Card and PIN and Other Instructions (not available in ID, OR and WA).** This section shall not apply if issuance of an Account Access Card is prohibited by law, or if the property securing this Agreement is located in the states of Texas or New York (in which case, all references in this Agreement to an "Account Access Card" are deleted). During the Draw Period, any one Borrower may request Lender to issue a card as described in this section, enabling access to the Account, and an associated Personal Identification Number (PIN). Any Borrower may request that such cards be provided to as many as, but no more than, the first three Borrowers listed at the top of this Agreement or who may be later added as a Borrower, or to fewer Borrowers, and to any other person who may be later added as a Borrower (provided that no more than the first three Borrowers may have such cards). Each Borrower is liable for all transactions made with such cards.

Any Borrower may give Lender any other directions with regard to such cards, including, but not limited to, terminating all of them.

All requests or directions, at Lender's option, may be made verbally or in writing. Borrower(s) agree that the cards will be used only as described in this Agreement. Borrower(s) further agree that the cards may be issued by Lender through an arrangement Lender may have from time to time with a card company (the "Card Company"), such as VISA. All references in this Agreement to an "Account Access Card" shall mean the card or cards described in this paragraph.

**Borrowers Protection Plan™.** (Borrowers Protection Plan is a registered trademark of Bank of America Corporation). Fixed Rate Loan Options may be protected by the Borrowers Protection Plan. Protection options include Disability, Involuntary Unemployment, and Accidental Death; or Disability and Accidental Death; or Involuntary Unemployment and Accidental Death. Two Borrowers may purchase Protection for each Fixed Rate Loan Option, but they must select the same coverage option, and there may be restrictions on which borrowers may apply. To qualify, you must meet all requirements as set forth in the Addendum for the Borrowers Protection Plan.

The Borrowers Protection Plan is optional and not required to obtain a new Fixed Rate Loan Option. For each Fixed Rate Loan Option, you must specifically request the Borrowers Protection Plan, and you must sign a separate Addendum to this Agreement, even if you obtained the Borrowers Protection Plan for a prior Fixed Rate Loan Option.

Fees for the Borrowers Protection Plan are based on and payable with the regularly scheduled monthly payment of the Fixed Rate Loan Option. Fixed Rate Loan Options with quarterly payments are not eligible for the Borrowers Protection Plan. Interest is not charged on the fees for Borrowers Protection Plan.

The maximum term of the Borrowers Protection Plan is the shorter of the Fixed Rate Loan Option term or 120 months.

We may allow you to exceed the Credit Limit temporarily and from time to time, to accommodate the premiums for the Borrowers Protection Plan.

**Fixed Rate Loan Option Payment Information.** A Fixed Rate Loan Option has a fixed interest rate and fixed term and is payable monthly. You may convert part or all of the Variable Rate Principal Balance, along with accrued interest, fees, the Fixed Rate Loan Option conversion fee and any voluntary insurance charge to a Fixed Rate Loan Option at any time during the Draw Period or the Repayment Period. We will help you establish the amount of principal and interest sufficient to amortize the Fixed Rate Loan Option over the term you select. The maximum term of any Fixed Rate Loan Option may not exceed the Repayment

# EXHIBIT 1

Period maturity date of this Agreement. The minimum amount for a Fixed Rate Loan Option is $5,000. You may have up to three (3) Fixed Rate Loan Options open at any one time, but may not have more than four (4) Fixed Rate Loan Options open during any one statement period. You may convert all or part of the Variable Rate Balance, plus the Fixed Rate Loan Option conversion fee to a Fixed Rate Loan Option unless you are in default or if your credit advance privileges are suspended or terminated. If you request interest rate offered to you for up to five (5) business days. If by the end of the fifth day the Variable Rate Balance is still less a Fixed Rate Loan Option, but the Variable Rate Balance is less than the amount requested, we will hold your request at the fixed than the amount of your request, it will not be processed. There may be a conversion fee charged for the establishment of each Fixed Rate Loan Option. Please refer to "Conditions Under Which Other Charges May Be Imposed" elsewhere in this Agreement for information about the conversion fee. The Fixed Rate Loan Option ANNUAL PERCENTAGE RATE is the Prime Rate plus the Fixed Rate Loan Option margin of 8.000%. However, we may make lower Fixed Rate Loan Option rates available from time to time. Please contact your Banking Center or Customer Service for the Fixed Rate Loan Option rate currently offered. Your payment will be a fixed dollar amount to be determined at the opening of the Fixed Rate Loan Option. You may arrange a different payment date for each Fixed Rate Loan Option. Fixed Rate Loan Option payments will be billed separately from your Regular Payment in accordance with the schedule you have arranged. For Fixed Rate Loan Options, you may choose to receive a separate bill. However, the Variable Rate Balance statement will show all activity, including payments.

**Governing Law.** This Agreement will be governed by and interpreted in accordance with federal law and the laws of the State of North Carolina. This Agreement has been accepted by us in the State of North Carolina.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the Security Instrument, is the best evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Security Instrument or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "When Your Home Is On The Line: What You Should Know About Home Equity Lines of Credit," given with the application.

This Agreement is dated

**THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**BORROWER:**

X _Leslye Rae Miller_ (Seal)          X _____ (Seal)
LESLYE RAE MILLER

X _____ (Seal)          X _____ (Seal)

**Effective Disbursement Date:** 04/07/04 _____

# EXHIBIT 1

# BILLING ERROR RIGHTS

## YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

Your name and account number.

The dollar amount of the suspected error.

Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow those rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

Page 13 of 13

# EXHIBIT 1

2

‖ ‖ (barcode)

**RECORDING REQUESTED BY**

Submitted for recordation by, and when recorded,
return to: B

**Bank of America** ◆

| | |
|---|---|
| Branch | Consumer Collateral Tracking |
| Address | 9000 Southside Blvd, Bldg. 700 |
| City | Jacksonville |
| State | FL |
| Zip | 32256 |
| Loan # | |
| Reference: | |

**2004–0020903**

| Recorded | REC FEE | 10.00 |
|---|---|---|
| Official Records | | |
| County OF | | |
| SHASTA | | |
| CRIG ANDREWS | | |
| Recorder | | |
| | 1 a sinneker | |
| 02:33PM 15-Apr-2004 | Page 1 of 2 | |

Space above this line for Recorder's Use

## SHORT FORM DEED OF TRUST
### (EQUITY MAXIMIZER® ACCOUNT)

This Deed of Trust is made on ___7th April, 2004___ by _____
LESLYE RAE MILLER, AN UNMARRIED PERSON
_____
_____

(collectively and individually "Trustor"); Equitable Deed Company ("Trustee"); and the beneficiary, Bank of America, N.A. ("Bank"). Trustee is a subsidiary of Bank. Any non-titleholder signs below as Trustor solely for the purpose of subjecting any community property interest in the property described below to this Deed of Trust. The words "I," "me," and "my" in this Deed of Trust refer to the Trustor, whether one or more.

Bank and I agree:
**1. Property Security.** For the purpose of securing the obligations described below, I irrevocably grant, convey, transfer and assign to Trustee, in trust with power of sale, the property located in_____
SHASTA _____ County, California described as follows:

LOT 15 OF LAKESHORE HEIGHTS SUBDIVISION, AS PER MAP THEREOF FILED
SEPTEMBER 12, 1960 IN BOOK 11 OF MAPS, AT PAGE 3, SHASTA COUNTY RECORDS.

with the street address: 18121 FOREST RD, LAKEHEAD, CA 96051
and with Parcel No. ___083-210-001___ and including all improvements and fixtures now or later erected on the property, and all easements, rights, appurtenances and fixtures now or later a part of or related to the above described property (collectively the "Property").

**2. This Deed of Trust secures :**
- All obligations of the borrowers in the Equity Maximizer Agreement and Disclosure, dated ___04/07/04___
 and naming ___LESLYE RAE MILLER___
 _____ as borrowers, for a revolving line of credit account (the "Agreement"), as well as any modifications and renewals of the Agreement. The Agreement provides for a Total Credit Commitment (as defined in the Agreement) of $ _50,000.00_ , allows for repeated credit advances drawn against the Total Credit Commitment, and provides for a variable interest rate. By mutual agreement, Bank may increase the Total Credit Commitment ("Increased Credit Commitment"); and
- Trustor's performance of each obligation in this Deed of Trust.

CLS-776-1-CA/0008   4-02    Page 1 of 2    Bank of America

## EXHIBIT 2

This Deed of Trust will not secure borrowers' obligations under the Agreement in excess of the Total Credit Commitment or Increased Credit Commitment, except for any amounts due to: (a) unpaid interest, or (b) expenses that Bank incurs because obligations of a borrower under the Agreement are not fulfilled (including without limitation, any advances that Bank makes to perform borrowers' duties to pay taxes, insurance, etc).

**To Protect the Security of this Deed of Trust, I Agree:** By the execution and delivery of this Deed of Trust and the Equity Maximizer Agreement and Disclosure secured hereby, that provisions (3) to (20), inclusive of the fictitious deed of trust recorded in __SHASTA_____ County __07/14/99_____, as Instrument __27872__ In Book/Reel and _____ at Page/Image _____ of the Official Records of the County Recorder of that county, (which provisions, identical in all counties, are printed on the following pages) hereby are adopted and incorporated herein and made a part hereof as though set forth at length; and I will observe and perform such provisions; and that the reference to Property, obligations, and parties in such provisions shall be construed to refer to the Property, obligations, and parties set forth in this Deed of Trust.

Trustor requests that a copy of ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE under this Deed of Trust be mailed to Trustor at the Trustor's address shown below, or if no address is shown, then at the address of the Property.

|   Signature   |   Mailing Address for Notices:   |
|---|---|
| *Leslye Rae Miller* (signature) | Street            City and State |
| LESLYE RAE MILLER | 18121 FOREST RD LAKEHEAD, CA 96051 |

## GENERAL ACKNOWLEDGMENT

State of California
County of __Contra Costa__
On __April 7, 2004__ before me, __Mojdeh Nazeri__, personally appeared __Leslye Rae Miller__
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature ___*Mojdeh Nazeri* (signature)___ (SEAL)

> MOJDEH NAZERI
> Commission # 1420795
> Notary Public - California
> Alameda County
> My Comm. Expires May 27, 2007

CLS-776-2-CA/0008   4-02                    Page 2 of 2                    Bank of America

# EXHIBIT 2



**2016-0028898**

Recorded      | REC FEE    15.00
Official Records   |
County of      | D4 FRAUD FEE   3.00
Shasta        |
Leslie Morgan    |
Assessor-Recorder |
                | PM
08:37AM 28-Sep-2016 | Page 1 of 1

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING, INC.

[AND WHEN RECORDED MAIL TO]
MCM Capital Partners, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned,**BANK OF AMERICA, N.A., WHOSE ADDRESS IS 1800 Tapo Canyon Road, Simi Valley, CA 93063, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, without recourse, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to **WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR HILLDALE TRUST, WHOSE ADDRESS IS 1114 Avenue of the Americas, 27th Floor, New York, NY 10036, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust made by **LESLYE RAE MILLER** and recorded on 04/15/2004 as **Doc # 2004-0020903** in the office of the **SHASTA** County Recorder, **CA**.

Dated on       **(MM/DD/YYYY)**
**BANK OF AMERICA, N.A., by SERVIS ONE, INC. DBA BSI FINANCIAL SERVICES, its Attorney-in-Fact**

By: _____
      Daniel B. Means
      Vice President

### ACKNOWLEDGEMENT

STATE OF MARYLAND
COUNTY OF MONTGOMERY
On ____ / ____ / ____ (MM/DD/YYYY), before me, the under-signed officer, personally appeared Daniel B. Means, Vice President of SERVIS ONE, INC. DBA BSI FINANCIAL SERVICES as Attorney-in-Fact for BANK OF AMERICA, N.A., who acknowledged that he/she/they, as such Vice President, being authorized to do so, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself /herself/themselves as Vice President. In witness whereof I hereunto set my hand and official seal. He/she/they is (are) personally known to me.

_____
Jamie L. Mertz
Notary Public - State of MARYLAND
Commission expires: 06/12/2018

> JAMIE L MERTZ
> Notary Public
> Montgomery County
> Maryland
> My Commission Expires June 12, 2018

**Document Prepared By: MCM Capital Partners 7500 Old Georgetown Rd. Suite 1300 Bethesda, MD 20814 (240) 744-3113**

# EXHIBIT 3

PREPARED BY:
C. R. Hall
Recording Requested by:
C. R. Hall
WHEN RECORDED RETURN TO:
C. R. Hall
2860 Exchange Blvd. # 100
Southlake TX 76092

### Assignment of Deed of Trust

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR HILLDALE TRUST** whose address is, **1114 Avenue of the Americas, Suite 2700, New York NY 10036 (Assignor)** by these presents does assign and set over, without recourse, to **CLEARLAKE VENTURES IV, LLC** whose address is, **1688 Meridian Ave, 7th Floor, Miami Beach FL 33139 (Assignee)** the described deed of trust with all interest, all liens, any rights due or to become due thereon, executed by **LESLYE RAE MILLER, AN UNMARRIED PERSON** to BANK OF AMERICA, N.A.. Trustee: EQUITABLE DEED COMPANY  Said deed of trust **Dated: 4/7/2004** is recorded in the **State of CA, County of Shasta on 04/15/2004, Instrument 2004-0020903 AMOUNT: $ 50,000.00**      Property Address: 18121 FOREST RD, LAKEHEAD, CA 96051

IN WITNESS WHEREOF, the undersigned entity has caused this instrument to be executed as a sealed instrument by its proper signatory.  Executed on: 1/11/2022
WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR HILLDALE TRUST
by Oak Hill Advisors, L.P. it's Attorney-in-Fact

By: _____

Matthew Ferguson, Authorized Signatory

State of _Texas_
County of _Tarrant_
        Before me, _Pamela K. Wood_, Notary Public, personally appeared, Matthew Ferguson, Authorized Signatory known to me to be the person(s) whose name(s) is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Given under my hand and seal of office on 1/11/2022

PAMELA K. WOODS
Notary Public, State of Texas
Comm. Expires 11-25-2022
Notary ID 1792652

Notary public, _Pamela K. Woods_
My commission expires: _11-25-2022_

# EXHIBIT 3
CA   Shasta

OHA/CROSBY/AOM/FBC

**This document was electronically submitted to Shasta County for recording** Doc 21

WFG National Default Services

RECORDING REQUESTED BY:
**ZBS Law, LLP**

WHEN RECORDED MAIL TO:

**ZBS Law, LLP**
**30 Corporate Park, Suite 450**
**Irvine, CA 92606**

**2021-0020160**

Leslie Morgan
Shasta - Assessor/Recorder
05/13/2021 08:07 AM

Titles: 1　　Pages: 3
Fees: $23.00
Taxes: $0.00
CA SB2 Fees:$75.00
Total: $98.00
mcbas

---

TS No.: 21001167-1 CA
APN: 083-210-001-000

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

## IMPORTANT NOTICE

# IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good

standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$43,729.23** as of **05/11/2021** and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or mortgage, the Beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the Beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

# EXHIBIT 4

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

TS No. **21001167-1 CA**

Upon your written request, the Beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Beneficiary or mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) Provide additional time in which to cure the default by transfer of the property or otherwise; or (2) Establish a schedule of payments in order to cure your default; or, both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. **To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact**

<div align="center">

**Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust,**
**not individually but as trustee for Hilldale Trust**
**C/O Fay Servicing, LLC**
**312-780-0446**
**C/O ZBS Law, LLP**
**30 Corporate Park, Suite 450**
**Irvine, CA 92606**
**PHONE: 714-848-7920**

</div>

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.
## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN**: That **ZBS Law, LLP** is either the original Trustee, the duly appointed substituted Trustee, or acting as agent for the Trustee or Beneficiary under a Deed of Trust dated **04/07/2004**, executed by **LESLYE RAE MILLER, AN UNMARRIED PERSON**, as Trustor, to secure certain obligations in favor of **Bank of America, N.A.** as Beneficiary, recorded **04/15/2004**, as Instrument No. **2004-0020903.** of Official Records of **Shasta** County, **California;** describing land therein as: As more particularly described on said Deed of Trust.

The subject obligation includes **NOTE(S) FOR THE ORIGINAL** sum of **$50,000.00**. A breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:

**The monthly installment which became due on March 25, 2014, along with late charges, and all subsequent monthly installments.**

**You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to, foreclosure trustee fees and costs, advances and late charges.**

**Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.**

**Nothing in this Notice of Default should be construed as a waiver of any fees owing to the beneficiary under the Deed of Trust, pursuant to the terms and provisions of the loan documents.**

<div align="center">

# EXHIBIT 4

</div>

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
TS No. **21001167-1 CA**

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

This office is enforcing a security interest of your creditor. To the extent that your obligation has been discharged by a bankruptcy court or is subject to an automatic stay of bankruptcy, this notice is for informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation.

**The requirements of California Civil Code 2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of Trust on "owner occupied" residential real property as defined by California Civil Code 2924.15.**

**Dated: 05/11/2021**                    **ZBS LAW, LLP, as Trustee**

**Michael Busby, Trustee Sale Officer**

# EXHIBIT 4

**2021-0042935**

**Leslie Morgan**
Shasta - Assessor/Recorder
10/19/2021 02:18 PM

[RECORDING REQUESTED BY]
**ZBS Law, LLP**

[WHEN RECORDED MAIL TO:]
**ZBS Law, LLP**
**30 Corporate Park, Suite 450**
**Irvine, CA 92606**

Titles: 1     Pages: 7
Fees: $35.00
Taxes:  $0.00
CA SB2 Fees:$75.00
Total:  $110.00
mcbas

---

T.S. No. 21001167-1 CA          APN: 083-210-001-000

# NOTICE OF TRUSTEE'S SALE

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NANAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI   LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 04/07/2004.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below.  The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

Trustor: **LESLYE RAE MILLER, AN UNMARRIED PERSON**

Duly Appointed Trustee: **ZBS Law, LLP**

Deed of Trust Recorded on **04/15/2004**, as Instrument No. **2004-0020903** of Official Records of **Shasta** County, **California;**

# EXHIBIT 5

Date of Sale: **11/15/2021** at **11:00 AM**
Place of Sale:     **At the East entrance to the County Courthouse, Shasta County Courthouse, 1500 Court Street, Redding, CA 96001**
Estimated amount of unpaid balance and other charges: **$72,727.11**
Note: Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt owed.

Street Address or other common designation of     **18121 FOREST RD**
real property:                                      **LAKEHEAD, CA 96051**

Described as follows:
As more fully described on said Deed of Trust.

A.P.N #.: **083-210-001-000**
The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above.  If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale.  If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **(855) 976-3916** or visit this Internet Web site **www.auction.com** using the file number assigned to this case **21001167-1 CA**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site.  The best way to verify postponement information is to attend the scheduled sale.

NOTICE TO TENANT: You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call **(855) 976-3916** or visit this Internet Web site **https://tracker.auction.com/sb1079** using the file number assigned to this case **21001167-1 CA** to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

# EXHIBIT 5

Dated: **10/19/2021**          **ZBS Law, LLP, as Trustee**
**30 Corporate Park, Suite 450,**
**Irvine, CA 92606**
**For Non-Automated Sale Information, call: (714) 848-7920**
**For Sale Information: (855) 976-3916 or www.auction.com**

**Michael Busby, Trustee Sale Officer**

This office is enforcing a security interest of your creditor. To the extent that your obligation has been
discharged by a bankruptcy court or is subject to an automatic stay of a bankruptcy, this notice is for
informational purposes only and does not constitute a demand for payment or any attempt to collect such
obligation.

**The loan servicer has fulfilled its obligation under either California Civil Code section 2923.5 or 2923.55
(as applicable). Please see Declaration of Compliance attached hereto.**

# EXHIBIT 5

# CALIFORNIA DECLARATION OF COMPLIANCE
## (Civil Code § 2923.55(c))

Borrower(s):            LESLYE RAE MILLER, AN UNMARRIED PERSON

Mortgage Servicer:     Fay Servicing, LLC

Property Address:       18121 FOREST RD
                         LAKEHEAD, CA 96051

T.S. No.:                 21001167-1 CA

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☐ The mortgage servicer has contacted the Borrower pursuant to California Civil Code § 2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☒ The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual did not meet the definition of 'borrower' pursuant to California Civil Code subdivision (c) of § 2920.5(c), or the definition of "successor in interest" pursuant to California Civil Code subdivisions (b)(1) and (i)(4) of section 2920.7.

4. ☐ The requirements of California Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of Trust on "owner occupied" residential real property as defined by California Civil Code § 2924.15.

ADDITIONALLY (check one):

1. ☒ During the effective time period of 8/31/2020 through 9/1/2021, the mortgage servicer denied a forbearance request that met the conditions of Cal. Civil Code § 3273.10(a). A copy of the written forbearance denial is attached. A Forbearance ☐ was ☒ was not subsequently provided

2. ☐ During the effective time period of 8/31/2020 through 9/12021, the mortgage servicer did not receive or deny a forbearance request that met the conditions of Civil Code § 3273.10(a).

I certify and represent that this mortgage servicer's declaration is accurate, complete and based upon competent and reliable evidence, which the mortgage servicer has reviewed including my review of the mortgage servicer's business records, to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Date: 10/12/21

Fay Servicing, LLC, Mortgage Servicer

By:

ATTACHMENT TO NOTICE OF DEFAULT

Sale

# EXHIBIT 5



August 23, 2021

ESTATE OF LESLYE RAE MILLER          Account Number:
                                     Property Address: 18121 FOREST RD
PO BOX 724                                             LAKEHEAD, CALIFORNIA 96051
LAKEHEAD, CA 96051

Dear Homeowner(s):

Thank you for contacting us about your mortgage. Based on a careful review of the information you provided to us, unfortunately you are not eligible for an alternative to foreclosure. Our review indicates that, although you may have a hardship, you do not qualify for any available loss mitigation options. Your account is presently due for the March 25, 2014 payment, and all subsequent payments. As of August 23, 2021, to reinstate your account you must pay $39,606.33, which includes all past due payments and late charges. If your account is in foreclosure, there may be additional fees that need to be paid in order to reinstate. Contact your Account Manager at (800) 495-7166 for a detailed reinstatement amount.

We recognize that this may be disappointing news for you. However, in order to avoid the negative impacts to your credit rating resulting from late payments and to avoid foreclosure, it is important that you make the full reinstatement payment as quickly as possible and continue to make your mortgage payment by the scheduled due date.

Please send your reinstatement payment in the full amount due to:

Fay Servicing, LLC
PO Box 814609
Dallas, TX 75381
ATTN: Loss Mitigation

**TIME IS OF THE ESSENCE.**
If you are unable to pay your mortgage or bring it current, we may pursue foreclosure and the sale of your home. If your mortgage loan is reinstated and you subsequently experience a financial hardship, you may contact us to request reconsideration for mortgage payment assistance or other alternatives to foreclosure.

If you have questions regarding this notice or your mortgage payment, please contact us at (800) 495-7166, or contact your Account Manager, PAMELA LUCAS, using the direct contact information below.

For a complete list of programs for which you were reviewed for eligibility or were not reviewed for due to a more appropriate option being offered, see Attachment A.

# EXHIBIT 5

Fay Servicing, LLC is a debt collector, and information you provide to us will be used for that purpose. To the extent your original obligation was discharged, or is subject to an automatic stay under the United States Bankruptcy Code, this is being provided for informational purposes only and does not constitute an attempt to collect a debt or impose personal liability. Call today: 1-800-495-7166, our office hours are Monday – Thursday 8am – 9pm, Friday 8am – 5pm, and Saturday 9am – 1pm, CST. NMLS ID #88244.

**Additional Information and Legal Notices**

**Federally Declared Disaster Area:**
If you are in a Federally Declared Disaster Area, you may have up to 120 days after the disaster area was designated by the federal government to appeal the decision that your loan is not eligible for the program(s). If you believe that you may be in a Federally Declared Disaster Area, please call us at (800) 495-7166.

**Federal ECOA Notice:**
Fay Servicing, LLC is required by law to inform you that the Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applications on the basis of race, color, religion, national origin; sex, marital status, or age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street N.W., Washington, DC 20552.

Our credit decision was based in whole or in part on information compiled from reports obtained from one or more of the three consumer reporting agencies listed below. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. These reporting agencies played no part in our decision and are unable to supply specific reasons we have denied credit to you. You have a right to receive a free copy of your report from these reporting agencies, if you request it no later than 60 days after you receive this notice. In addition, if you find that information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the applicable reporting agency by contacting that agency at the number provided below:

| | |
|---|---|
| **Equifax:** | PO Box 740241 Atlanta, GA 30374-0242 (800) 685-1111 |
| **Experian:** | PO Box 9701 Allen, TX 75013-9701 (888) 397-3742 |
| **TransUnion:** | PO Box 2000 Chester, PA 19022-2000 (800) 916-8800 |

**Homeownership Counseling Services:**
Homeownership counseling is available through a variety of nonprofit organizations experienced in homeownership counseling and approved by the Secretary of Housing and Urban Development (HUD). A listing of such organizations may be obtained by calling the HOPE Hotline Number: (888) 995-HOPE. This hotline can help with questions about the program and offers access to free HUD-certified counseling services in a variety of languages.

California borrowers: Fay's CRMLA License # is 4130976
**Right to Appeal**
You have the right to appeal our decision. If you would like to appeal, you must contact us in writing at the address provided below or by email at appeals@fayservicing.com, no later than 30 days from the date of this notice, and state that you are requesting an appeal of our decision. You must include in the appeal your name, property address, and mortgage loan number. You may also specify the reasons for your appeal, and provide any supporting documentation. Your right to appeal expires 30 days from the date of this notice. Any appeal requests or documentation received after 30 days from the date of this notice may not be considered.

Fay Servicing, LLC
3000 Professional Drive, Suite A
Springfield, IL 62703
ATTN: Appeals

If you elect to appeal, we will provide you a written notice of our appeal decision within 30 calendar days of receiving your appeal. Our appeal decision is final, and not subject to further appeal.

If you wait to make your past due payments until after receiving our appeal decision, your loan will become more delinquent. Any unpaid interest, and other unpaid amounts, such as escrows for taxes and insurance, will continue to accrue on your mortgage loan during the appeal, and will be added to the total amount due to bring your loan current.

**Attachment A**

**Based on our review of your financial circumstances, the following are programs for which you were reviewed for eligibility or were not reviewed for due to a more appropriate option being offered. You may obtain additional documentation supporting the denial decision upon your written request to Fay Servicing.**

**Repayment Plan:**
      Based on the income information and documentation provided the current income is insufficient to achieve a payment that would qualify for the program.

**Deferment (Limited):**
      The delinquent balance on the mortgage exceeds program guidelines.

**Fay Servicing Modification:**
      Based on the income information and documentation provided the current income is insufficient to achieve a payment that would qualify for the program.

**Deferment (Large Amount):**
      Based on the income information and documentation provided the current income is insufficient to achieve a payment that would qualify for the program.

**Fay Servicing Short Sale:**
      The Investor that owns the mortgage does not participate in this program.  The investor for your loan is Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Hilldale Trust.

**Fay Servicing Deed-in-Lieu:**
      The Investor that owns the mortgage does not participate in this program.  The investor for your loan is Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Hilldale Trust.

**Space Below Intentionally left Blank**

EXHIBIT 5

Printed on Jun 22 2022 1:11 pm

# 2:21-bk-23871 - Larry Errol Miller

Docket Header Last Updated: 6/6/2022 7:33 pm

**DISMISSED**

**U.S. Bankruptcy Court**

**Eastern District of California (Sacramento)**

**Bankruptcy Petition #: 21-23871**

| | |
|---|---|
| *Assigned to:* Hon. Fredrick E. Clement | *Date filed:* 11/12/2021 |
| Chapter 13 | *Debtor dismissed:* 04/05/2022 |
| Voluntary | *341 meeting:* 01/20/2022 |
| Asset | *Deadline for filing claims:* 01/21/2022 |
| Claims Register | *Deadline for filing claims (govt.):* 05/11/2022 |

*Debtor disposition:* Dismissed for failure to make plan payments

| | |
|---|---|
| ***Debtor*** | represented by **Bruce Charles Dwiggins** |
| **Larry Errol Miller** | 1901 Park Marina Dr |
| PO Box 724 | Redding, CA 96001 |
| Lakehead, CA 96051 | 530-246-1445 |
| SHASTA-CA | Email: redding@bankruptcylawyerredding.com |
| SSN / ITIN: xxx-xx-9839 | |

***Trustee***
**David Cusick**
PO Box 1858
Sacramento, CA 95812-1858
916-856-8000

***U.S. Trustee***
**Office of the U.S. Trustee**
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

| Date Filed | # | Docket Text |
|---|---|---|
| 06/08/2022 | 37 | Certificate of Mailing of Trustee's Final Report and Account as provided by the Bankruptcy Noticing Center (Admin.) |
| 06/08/2022 | 36 | Certificate of Mailing of Notice of Filing Chapter 13 Trustee's Final Report and Account and of Order Fixing Deadline for Objecting Thereto as provided by the Bankruptcy Noticing Center (Admin.) |
| 06/06/2022 | 35 | Notice of Filing Chapter 13 Trustee's Final Report and Account and of Order Fixing Deadline for Objecting Thereto as Transmitted to BNC for Service. (Auto) (Entered: 06/06/2022) |
| 06/06/2022 | 34 | Trustee's Final Report and Account as transmitted to BNC for service. (Cusick, David) (Entered: 06/06/2022) |
| 04/07/2022 | 33 | Certificate of Mailing of Notice of 32 Notice of Entry of Order of Dismissal as provided by the Bankruptcy Noticing Center (Admin.) (Entered: 04/07/2022) |
| | | Notice of Entry of Order as Transmitted to BNC for Service Re: 31 Order Granting 21 Motion/Application to Dismiss Case [DPC-11 |

EXHIBIT 6

| | | |
|---|---|---|
| 04/05/2022 | 32 | Notice of Entry of Order as Transmitted to BNC for Service Re: 31 Order Granting 21 Motion/Application to Dismiss Case [DPC-1] (mgrs) (mgrs) (Entered: 04/05/2022) |
| 04/05/2022 | 31 | Order Granting 21 Motion/Application to Dismiss Case [DPC-1] (mgrs) (Entered: 04/05/2022) |
| 04/05/2022 | 30 | Civil Minutes -- Motion Granted, Resolved without Oral Argument Re: 21 - Motion/Application to Dismiss Case [DPC-1] (auto) (Entered: 04/05/2022) |
| 03/24/2022 | doc | Notice of Mortgage Payment Change with Certificate of Service Filed by Creditor Blue Castle (Cayman) LTD (mgrs) (Entered: 03/24/2022) |
| 03/21/2022 | 29 | Certificate/Proof of Service of 28 Declaration [DPC-1] (mgrs) (Entered: 03/22/2022) |
| 03/21/2022 | 28 | Declaration of Larry Miller Re: 21 Motion/Application to Dismiss Case [DPC-1] (mgrs) (Entered: 03/22/2022) |
| 03/07/2022 | doc | Notice of Mortgage Payment Change with Certificate of Service Filed by Creditor Blue Castle (Cayman) LTD (rlos) (Entered: 03/08/2022) |
| 03/02/2022 | 27 | Certificate of Mailing of Notice of Intent to Transfer Claim as provided by the Bankruptcy Noticing Center (Admin.) (Entered: 03/02/2022) |
| 02/28/2022 | | Transfer Of Claim Fee Paid ($26.00, Receipt Number: 375193, eFilingID: 7067599) (auto) (Entered: 02/28/2022) |
| 02/28/2022 | 26 | Notice of Intent to Transfer Claim From Transferor: Wilmington Savings Fund Society, FSB (Claim No. 6) To Blue Castle (Cayman) LTD As Submitted To BNC For Service. (This image is for BNC use only, to review the Transfer of Claim refer to the Certificate of Mailing docketed within 3 days of this entry.) (mgrs) (Entered: 02/28/2022) |
| 02/28/2022 | 25 | Assignment/Transfer of Claim from Wilmington Savings Fund Society, FSB to Blue Castle (Cayman) LTD (Fee Paid $26) (eFilingID: 7067599) (mgrs) (Entered: 02/28/2022) |
| 02/22/2022 | 24 | Certificate/Proof of Service of 21 Motion/Application to Dismiss Case [DPC-1], 22 Notice of Hearing, 23 Declaration (lars) (Entered: 02/23/2022) |
| 02/22/2022 | 23 | Declaration of Kristen Koo in support of 21 Motion/Application to Dismiss Case [DPC-1] (lars) (Entered: 02/23/2022) |
| 02/22/2022 | 22 | Notice of Hearing Re: 21 Motion/Application to Dismiss Case [DPC-1] to be held on 4/5/2022 at 09:00 AM at Sacramento Courtroom 28, Department A. (lars) (Entered: 02/23/2022) |
| 02/22/2022 | 21 | Motion/Application to Dismiss Case [DPC-1] Filed by Trustee David Cusick (lars) (Entered: 02/23/2022) |
| 01/20/2022 | | Report of Trustee at 341 Meeting. The 341 Meeting was held on 01/20/2022. Debtor Appeared; Counsel of Record Appeared; 341 Meeting Concluded as to Debtor. (Cusick, David) |
| 01/10/2022 | 20 | Notice of Mortgage Payment Change (No Proof of Claim Filed) with Certificate of Service Filed by Creditor Wilmington Savings Fund Society, FSB (mgrs) (Entered: 01/10/2022) |
| 01/07/2022 | 19 | Request for Special Notice Filed by Creditor Synchrony Bank (vcaf) (Entered: 01/07/2022) |
| 12/20/2021 | | Report of Trustee at 341(a) Meeting. The Sec. 341(a) meeting was adjourned on 12/16/21. Debtor Did Not Appear; Counsel of Record Appeared; Continued Meeting of Creditors to be held on 1/20/2022 at 1:00 PM at http://www.cusick13.com/ or call Trustees office (916) 856-8042 for instructions to appear. (Cusick, David) |
| 12/20/2021 | | Report of Trustee at 341(a) Meeting. The Sec. 341(a) meeting was adjourned on 12/16/21. Debtor Did Not Appear; Counsel of Record Appeared; Continued Meeting of Creditors to be held on 1/20/2022 at 1:00 PM at http://www.cusick13.com/ or call Trustees office (916) 856-8042 for instructions to appear. (Cusick, David) (Entered: 12/20/2021) |
| 12/06/2021 | 18 | Notice of Mortgage Payment Change (No Proof of Claim Filed) with Certificate of Service Filed by Creditor Wilmington Savings Fund Society, FSB (mgrs) (Entered: 12/06/2021) |
| 11/30/2021 | 17 | Request for Special Notice Filed by Creditor Wilmington Savings Fund Society, FSB (mgrs) (Entered: 12/01/2021) |

Page 34 of 48

**EXHIBIT 6**

6/22/22, 1:17 PM    2:21-bk-23871 - Larry Errol Miller (Bankr.E.D.Cal.) | CourtDrive

| Date | Doc | Description |
|------|-----|-------------|
| 11/26/2021 | 16 | Chapter 13 Plan (mgrs) (Entered: 12/01/2021) |
| 11/26/2021 | 15 | Rights and Responsibilities of Chapter 13 Debtor(s) and their Attorney (mgrs) (Entered: 12/01/2021) |
| 11/26/2021 | doc | Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period for 3 Years Form 122C-1. Disposable Income Is Not Determined Re: 6 Notice of Incomplete Filing (mgrs) (Entered: 11/30/2021) |
| 11/26/2021 | 14 | Summary of Schedules/Assets and Liabilities Schedule A/B Schedule C Schedule G Schedule H Schedule I Schedule J Statement of Financial Affairs Disclosure of Attorney Compensation Individual (mgrs) (Entered: 11/30/2021) |
| 11/24/2021 | 13 | Certificate of Mailing of Notice of Meeting of Creditors as provided by the Bankruptcy Noticing Center (Admin.) (Entered: 11/24/2021) |
| 11/22/2021 | 12 | Notice of Commencement of Case Under Chapter 13, Meeting of Creditors and Deadlines as transmitted to BNC for service. Meeting of Creditors to be held on **12/16/2021 at 11:00 AM**, see Notice for Location of Meeting. Proofs of Claim due by **1/21/2022**. (Cusick, David) (Entered: 11/22/2021) |
| 11/22/2021 | 11 | Personal Financial Management Course Certificate For Debtor (Geving, Allison) (Entered: 11/22/2021) |
| 11/22/2021 | 10 | Notice of Mortgage Payment Change (No Proof of Claim Filed) with Certificate of Service Filed by Creditor WILMINGTON SAVINGS FUND SOCIETY, FSB (kwis) (Entered: 11/22/2021) |
| 11/20/2021 | 9 | Certificate of Mailing of Notice of Incomplete Filing and Notice of Intent to Dismiss Case if Documents Are Not Timely Filed as provided by the Bankruptcy Noticing Center (Admin.) (Entered: 11/20/2021) |
| 11/18/2021 | 8 | Notice of Incomplete Filing and Notice of Intent to Dismiss Case if Documents Are Not Timely Filed as transmitted to BNC for service. (mgrs) (Entered: 11/18/2021) |
| 11/17/2021 | 7 | Request for Special Notice Filed by Creditor JP Morgan Chase Bank, NA (mgrs) (Entered: 11/18/2021) |
| 11/12/2021 | 6 | Notice of Incomplete Filing and Notice of Intent to Dismiss Case If Documents Are Not Timely Filed. Missing Document(s): Statement of Financial Affairs; Attorney Disclosure Statement; Summary of Assets and Liabilities; Chapter 13 Plan;Schedule A/B - Real and Personal Property; Schedule C - Exempt Property; Schedule G - Exec. Contracts & Unexpired Leases; Schedule H - Codebtors; Schedule I - Current Income of Individual; Schedule J - Current Expenditures; Form 122C-1 - Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period; Document(s) due by **11/29/2021**. (dpas) (Entered: 11/12/2021) |
| 11/12/2021 | 5 | Order Re: Chapter 13 Plan Payments, Adequate Protection Payments, and Employer Payment Advices (auto) (Entered: 11/12/2021) |
| 11/12/2021 | 4 | Designation of Trustee (auto) (Entered: 11/12/2021) |
| 11/12/2021 | | Chapter 13 Voluntary Petition (Filing Fee Paid: $313.00, Receipt Number: 372752, eFilingID: 7036083) (auto) (Entered: 11/12/2021) |
| 11/12/2021 | 3 | Master Address List (auto) (Entered: 11/12/2021) |
| 11/12/2021 | 2 | Statement of Social Security Number(s) (auto) (Entered: 11/12/2021) |
| 11/12/2021 | 1 | Chapter 13 Voluntary Petition Individual filed. (Fee Paid $313.00) (Bruce Dwiggins) (eFilingID: 7036083) (Entered: 11/12/2021) |

EXHIBIT 6

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No. 21-23871 - A - 13 |
| Larry Errol Miller, | ) Docket Control No. DPC-1 |
|          Debtor. | ) Document No. 21 |
| | ) Date: 04/05/2022 |
| | ) Time: 9:00 AM |
| | ) Dept: A |

**Order**

Findings of fact and conclusions of law are stated in the civil minutes for the hearing.

The trustee's motion to dismiss this chapter 13 case has been presented to the court. Having entered the default of respondent debtor for failure to appear, timely oppose, or otherwise defend in the matter, and having considered the well-pleaded facts of the motion,

IT IS ORDERED that the motion is granted because of the delinquency under the confirmed chapter 13 plan in this case. The court hereby dismisses this case.

**Dated:** April 05, 2022

_FES Clt_

Fredrick E. Clement
**United States Bankruptcy Judge**

EXHIBIT 7

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Larry Errol Miller** |
| | First Name     Middle Name     Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name     Middle Name     Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF CALIFORNIA |
| Case number | **2022-21231** |

☐ Check if this is an amended filing

Official Form 106A/B

# Schedule A/B: Property                                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ☐ No. Go to Part 2.

   ■ Yes.  Where is the property?

| 1.1 | | |
|---|---|---|
| **18121 Forest Road** | **What is the property?** Check all that apply | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*. |
| Street address, if available, or other description | ☐ Single-family home | |
| | ☐ Duplex or multi-unit building | |
| | ☐ Condominium or cooperative | |
| | ☐ Manufactured or mobile home | **Current value of the entire property?**     **Current value of the portion you own?** |
| **Lakehead          CA     96051-0000** | ☐ Land | **$255,000.00**              **$255,000.00** |
| City          State     ZIP Code | ☐ Investment property | |
| | ☐ Timeshare | **Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.** |
| | ☐ Other | |
| | **Who has an interest in the property?** Check one | |
| **Shasta** | ■ Debtor 1 only | |
| County | ☐ Debtor 2 only | |
| | ☐ Debtor 1 and Debtor 2 only | ☐ **Check if this is community property** (see instructions) |
| | ☐ At least one of the debtors and another | |
| | Other information you wish to add about this item, such as local property identification number: | |

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here...........................................................................=>**          **$255,000.00**

**Part 2:    Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

# EXHIBIT 8

Debtor 1  **Larry Errol Miller**                    Case number *(if known)*  **2022-21231**

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No

■ Yes

3.1  Make:  **Cadillac**

Model:  **Coupe**

Year:  **1970**

Approximate mileage:  **128000**

Other information:

**This was Debtor's mother's car. She is deceased and Debtor has inherited the vehicle. This is a vehicle Debtor plans to sell within 12 months to hep fund his plan.**

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?

Current value of the portion you own?

$14,000.00          $14,000.00

---

3.2  Make:  **Honda**

Model:  **550 Nighthawk**

Year:  **1995**

Approximate mileage:  **4500**

Other information:

**In like new condition. This is a vehicle debot will sell within 12 months to fund his plan**

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?

Current value of the portion you own?

$2,500.00          $2,500.00

---

3.3  Make:  **Cadillac**

Model:  **4 door Seville**

Year:  **1995**

Approximate mileage:  **153000**

Other information:

**Debtor will sell this vehicle to support his plan, should it become necessary.**

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?

Current value of the portion you own?

$6,000.00          $6,000.00

---

3.4  Make:  **Jeep**

Model:  **Cherokee**

Year:  **1995**

Approximate mileage:  **130000**

Other information:

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?

Current value of the portion you own?

$4,000.00          $4,000.00

---

3.5  Make:  **BMW**

Model:  **740 IL**

Year:  **1999**

Approximate mileage:  **93500**

Other information:

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?

Current value of the portion you own?

$5,600.00          $5,600.00

---

Official Form 106A/B                    Schedule A/B: Property                    page 2

# EXHIBIT 8

| Debtor 1 | Larry Errol Miller | Case number *(if known)* | 2022-21231 |
|---|---|---|---|

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☐ No
■ Yes

| 4.1 | Make: | **SeaDoo Boombardier** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|
| | Model: | | ■ Debtor 1 only | |
| | Year: | **2000** | ☐ Debtor 2 only | |
| | | | ☐ Debtor 1 and Debtor 2 only | Current value of the entire property? / Current value of the portion you own? |
| | Other information: | | ☐ At least one of the debtors and another | |
| | | **Essentially unsused on a trailer. This is an item debtor plans to sell with 1 monthsto continue to fund is plan.** | ☐ Check if this is community property (see instructions) | $4,500.00 / $4,500.00 |

5 Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here..........................................=> | **$36,600.00** |

**Part 3:**  Describe Your Personal and  Household Items

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**6. Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware

☐ No
■ Yes.  Describe.....

| Houshold furnishings | $1,750.00 |
|---|---|

**7. Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

☐ No
■ Yes.  Describe.....

| Cell phone and laptop | $500.00 |
|---|---|

**8. Collectibles of value**
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

■ No
☐ Yes.  Describe.....

**9. Equipment for sports and hobbies**
*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

■ No
☐ Yes.  Describe.....

**10. Firearms**
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

☐ No
■ Yes.  Describe.....

| 1 pistol | $200.00 |
|---|---|

EXHIBIT 8

| Debtor 1 | **Larry Errol Miller** | Case number *(if known)* | **2022-21231** |
|---|---|---|---|

**11. Clothes**
   *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
   ☐ No
   ☑ Yes. Describe.....

| Clothes for 70+ year old gentleman | **$250.00** |
|---|---|

**12. Jewelry**
   *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
   ☐ No
   ☑ Yes. Describe.....

| Mens Jewelry from former marriage, etc, | **$3,000.00** |
|---|---|

**13. Non-farm animals**
   *Examples:* Dogs, cats, birds, horses
   ☐ No
   ☑ Yes. Describe.....

| Havanese Dog "Boomer" | **$100.00** |
|---|---|

**14. Any other personal and household items you did not already list, including any health aids you did not list**
   ☑ No
   ☐ Yes. Give specific information.....

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ...............................................................................

| **$5,800.00** |
|---|

**Part 4: Describe Your Financial Assets**

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**16. Cash**
   *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
   ☐ No
   ☑ Yes.................................................................................

| **Cash** | **$4,500.00** |
|---|---|

**17. Deposits of money**
   *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
   ☐ No
   ☑ Yes........................ Institution name:

| 17.1. | **Checking** | **Wells Fargo 9593** | **$1,140.15** |
|---|---|---|---|

**18. Bonds, mutual funds, or publicly traded stocks**
   *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
   ☑ No
   ☐ Yes.................. Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
   ☑ No

Official Form 106A/B          Schedule A/B: Property          page 4

# EXHIBIT 8

Debtor 1   **Larry Errol Miller**        Case number *(if known)*  **2022-21231**

☐ Yes.  Give specific information about them...................
Name of entity:              % of ownership:

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

■ No
☐ Yes. Give specific information about them
Issuer name:

**21. Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

■ No
☐ Yes. List each account separately.
Type of account:          Institution name:

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No
☐ Yes. .....................         Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No
☐ Yes.............      Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No
☐ Yes.............      Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

■ No
☐ Yes.  Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

■ No
☐ Yes.  Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

■ No
☐ Yes.  Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**28. Tax refunds owed to you**

■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

_____

**29. Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

■ No
☐ Yes. Give specific information......

# EXHIBIT 8

| Debtor 1 | **Larry Errol Miller** | Case number *(if known)* | **2022-21231** |
|---|---|---|---|

30. **Other amounts someone owes you**
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

   ☐ No

   ■ Yes. Give specific information.

   | Loan Due from Frank Stahlschmidt | $26,000.00 |
   |---|---|

31. **Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

   ■ No

   ☐ Yes. Name the insurance company of each policy and list its value.

   | Company name: | Beneficiary: | Surrender or refund value: |
   |---|---|---|

32. **Any interest in property that is due you from someone who has died**
   If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

   ■ No

   ☐ Yes. Give specific information.

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
   *Examples:* Accidents, employment disputes, insurance claims, or rights to sue

   ■ No

   ☐ Yes. Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

   ■ No

   ☐ Yes. Describe each claim.........

35. **Any financial assets you did not already list**

   ☐ No

   ■ Yes. Give specific information.

   | Mausoleum Space | $9,000.00 |
   |---|---|

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**................................................................................................................

   | $40,640.15 |
   |---|

**Part 5:** Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37. **Do you own or have any legal or equitable interest in any business-related property?**

   ■ No. Go to Part 6.

   ☐ Yes. Go to line 38.

**Part 6:** Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1.

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

   ■ No. Go to Part 7.

   ☐ Yes. Go to line 47.

**Part 7:** Describe All Property You Own or Have an Interest in That You Did Not List Above

EXHIBIT 8

| Debtor 1 | **Larry Errol Miller** | Case number *(if known)* | **2022-21231** |

53. **Do you have other property of any kind you did not already list?**
    *Examples:* Season tickets, country club membership

    ■ No
    ☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ....................................

|  | **$0.00** |

| **Part 8:** | List the Totals of Each Part of this Form |

55. **Part 1: Total real estate, line 2** .................................................................................................... | **$255,000.00**

56. **Part 2: Total vehicles, line 5** | **$36,600.00**

57. **Part 3: Total personal and household items, line 15** | **$5,800.00**

58. **Part 4: Total financial assets, line 36** | **$40,640.15**

59. **Part 5: Total business-related property, line 45** | **$0.00**

60. **Part 6: Total farm- and fishing-related property, line 52** | **$0.00**

61. **Part 7: Total other property not listed, line 54** + | **$0.00**

62. **Total personal property.** Add lines 56 through 61... | **$83,040.15** | Copy personal property total | **$83,040.15**

63. **Total of all property on Schedule A/B**. Add line 55 + line 62 | **$338,040.15**

# EXHIBIT 8

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Larry Errol Miller** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF CALIFORNIA |
| Case number (if known) | **2022-21231** |

☐ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:     List All Secured Claims**

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|

**2.1  Chase Bank - Mortgge**
Creditor's Name

**700 Kansas Lane
Monroe, LA 71203**
Number, Street, City, State & Zip Code

Describe the property that secures the claim:
**18121 Forest Road Lakehead, CA 96051  Shasta County**

$216,492.00  |  $255,000.00  |  $0.00

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)  **First Mortgage Leslye Rae Miller (Deceased)**

Date debt was incurred _____    Last 4 digits of account number  **0299**

Official Form 106D          Schedule D: Creditors Who Have Claims Secured by Property          page 1 of 2

# EXHIBIT 8

| Debtor 1 | **Larry** | **Errol** | **Miller** | Case number (if known) | **2022-21231** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| 2.2 | **FCI Lending Services** | Describe the property that secures the claim: | **$86,095.00** | **$255,000.00** | **$47,587.00** |
|---|---|---|---|---|---|

Creditor's Name

**18121 Forest Road Lakehead, CA 96051 Shasta County**

**PO Box 28720 Anaheim, CA 92809**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)    **Account of Lesley Rae Miller (Deceased)**

Date debt was incurred _____  Last 4 digits of account number   **6158**

---

| 2.3 | **Franchise Tax Board** | Describe the property that secures the claim: | **$88,265.91** | **$255,000.00** | **$88,265.91** |
|---|---|---|---|---|---|

Creditor's Name

**Chief Counsel c/o Gen. Counsel Section PO Box 1720 MS A-260 Rancho Cordova, CA 95741-1720**

**18121 Forest Road Lakehead, CA 96051 Shasta County**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☑ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred _____  Last 4 digits of account number

---

| | | |
|---|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | | **$390,852.91** |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | | **$390,852.91** |

**Part 2:**   List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

[ ]   Name, Number, Street, City, State & Zip Code
**Franchise Tax Board**
**Bankruptcy Section MS-A 340**
**PO Box 2952**
**Sacramento, CA 95812-2952**

On which line in Part 1 did you enter the creditor?   **2.3**

Last 4 digits of account number ___

---

[ ]   Name, Number, Street, City, State & Zip Code
**Franchise Tax Board**
**501 I Street Suite 3-200**
**Sacramento, CA 95814**

On which line in Part 1 did you enter the creditor?   **2.3**

Last 4 digits of account number ___

---

Official Form 106D      Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**      page 2 of 2

# EXHIBIT 8

Fill in this information to identify your case:

Debtor 1     **Larry Errol Miller**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:     EASTERN DISTRICT OF CALIFORNIA

Case number     **2022-21231**
(If known)

Check if this is:
- ☐ An amended filing
- ☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

## Official Form 106J
# Schedule J: Your Expenses                                                12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

| Part 1: | Describe Your Household |
|---|---|

1. **Is this a joint case?**

   ■ No. Go to line 2.
   ☐ Yes. **Does Debtor 2 live in a separate household?**

   ☐ No
   ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?**     ■ No

   Do not list Debtor 1 and     ☐ Yes.     Fill out this information for
   Debtor 2.                                 each dependent..............

   Do not state the
   dependents names.

| | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|---|
| | _____ | _____ | ☐ No ☐ Yes |
| | _____ | _____ | ☐ No ☐ Yes |
| | _____ | _____ | ☐ No ☐ Yes |
| | _____ | _____ | ☐ No ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**     ■ No     ☐ Yes

| Part 2: | Estimate Your Ongoing Monthly Expenses |
|---|---|

**Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental** *Schedule J*, **check the box at the top of the form and fill in the applicable date.**

**Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on** *Schedule I: Your Income* **(Official Form 106I.)**

|  | **Your expenses** |
|---|---|

4. **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot.          4.  $          **1,803.00**

   **If not included in line 4:**

   4a.  Real estate taxes          4a.  $          0.00
   4b.  Property, homeowner's, or renter's insurance          4b.  $          0.00
   4c.  Home maintenance, repair, and upkeep expenses          4c.  $          0.00
   4d.  Homeowner's association or condominium dues          4d.  $          0.00
5. **Additional mortgage payments for your residence,** such as home equity loans          5.  $          0.00

# EXHIBIT 8

| Debtor 1 | **Larry Errol Miller** | Case number (if known) | **2022-21231** |
|---|---|---|---|

| | | | |
|---|---|---|---|
| 6. | **Utilities:** | | |
| | 6a.    Electricity, heat, natural gas | 6a.   $ | **150.00** |
| | 6b.    Water, sewer, garbage collection | 6b.   $ | **25.00** |
| | 6c.    Telephone, cell phone, Internet, satellite, and cable services | 6c.   $ | **86.00** |
| | 6d.    Other. Specify: | 6d.   $ | **0.00** |
| 7. | **Food and housekeeping supplies** | 7.   $ | **150.00** |
| 8. | **Childcare and children's education costs** | 8.   $ | **0.00** |
| 9. | **Clothing, laundry, and dry cleaning** | 9.   $ | **10.00** |
| 10. | **Personal care products and services** | 10.   $ | **0.00** |
| 11. | **Medical and dental expenses** | 11.   $ | **0.00** |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. <br> Do not include car payments. | 12.   $ | **75.00** |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13.   $ | **0.00** |
| 14. | **Charitable contributions and religious donations** | 14.   $ | **0.00** |
| 15. | **Insurance.** <br> Do not include insurance deducted from your pay or included in lines 4 or 20. | | |
| | 15a.   Life insurance | 15a.   $ | **0.00** |
| | 15b.   Health insurance | 15b.   $ | **0.00** |
| | 15c.   Vehicle insurance | 15c.   $ | **126.00** |
| | 15d.   Other insurance. Specify: | 15d.   $ | **0.00** |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. <br> Specify: | 16.   $ | **0.00** |
| 17. | **Installment or lease payments:** | | |
| | 17a.   Car payments for Vehicle 1 | 17a.   $ | **0.00** |
| | 17b.   Car payments for Vehicle 2 | 17b.   $ | **0.00** |
| | 17c.   Other. Specify: | 17c.   $ | **0.00** |
| | 17d.   Other. Specify: | 17d.   $ | **0.00** |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | 18.   $ | **0.00** |
| 19. | **Other payments you make to support others who do not live with you.** <br> Specify: | 19.   $ | **0.00** |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income*.** | | |
| | 20a.   Mortgages on other property | 20a.   $ | **0.00** |
| | 20b.   Real estate taxes | 20b.   $ | **0.00** |
| | 20c.   Property, homeowner's, or renter's insurance | 20c.   $ | **0.00** |
| | 20d.   Maintenance, repair, and upkeep expenses | 20d.   $ | **0.00** |
| | 20e.   Homeowner's association or condominium dues | 20e.   $ | **0.00** |
| 21. | **Other:** Specify:    **Pet Care and Food** | 21.   +$ | **50.00** |

| | | | |
|---|---|---|---|
| 22. | **Calculate your monthly expenses** | | |
| | 22a. Add lines 4 through 21. | $ | **2,475.00** |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | $ | |
| | 22c. Add line 22a and 22b. The result is your monthly expenses. | $ | **2,475.00** |
| 23. | **Calculate your monthly net income.** | | |
| | 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | 23a.   $ | **3,275.00** |
| | 23b. Copy your monthly expenses from line 22c above. | 23b.   -$ | **2,475.00** |
| | 23c. Subtract your monthly expenses from your monthly income. <br> The result is your *monthly net income.* | 23c.   $ | **800.00** |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.
☐ Yes.    Explain here: |_____|

# EXHIBIT 8

## **POST PETITION PAYMENT HISTORY**

Borrower: Estate of Leslye Rae Miller
Debtor: Larry Errol Miller
BK Case No. 22-21231
Post-Petition Due Date: 06/25/2022

| Date of Payment | Amount | Post-Petition Application |
|---|---|---|
|  |  |  |

EXHIBIT 9